# IN THE COURT OF APPEALS OF IOWA

No. 24-1179
Filed July 2, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JUSTIN CRAIG BOZARTH,**
    Defendant-Appellant.
_____

Discretionary review from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A criminal defendant who pled guilty attempts to appeal from denial of a last-minute request to continue sentencing. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

Justin Bozarth attempts to appeal denial of his attorney's last-minute request to continue sentencing following his guilty plea. He claims the district court violated his constitutional rights or abused its discretion. After winding our way through some jurisdictional ambiguity, we find the constitutional issue unpreserved, grant discretionary review to address the abuse-of-discretion question, and affirm.

## I.       Background Facts and Proceedings

Bozarth stalked his estranged wife in violation of a no-contact order. He texted her "I'm going to kill you bitch," and she petitioned for relief from domestic abuse. He left voice messages saying he was going to assault her boyfriend and specifying that he had access to weapons. He sent emails referencing her physical location. And he kept contacting her in violation of the no-contact order even after she blocked him on every possible medium. In one of the most recent contacts before charges were filed, he told her: "just remember you bitch is getting fucked up talking to my boy across the street from you."

Bozarth originally pled guilty to a lesser-included charge—a class "D" felony alternative of stalking in violation of Iowa Code section 708.11(3)(b)(1) (2023). The court vacated this initial plea because the statute had been amended as of July 1, 2023 (before Bozarth's actions), and the factual basis did not support the new version. Bozarth then pled guilty as charged, to the class "C" felony alternative of stalking, in violation of Iowa Code section 708.11(3)(a)(1). After his first plea was vacated but before entering his second plea, Bozarth violated his conditions of supervised release by driving past his ex-wife's house and threatening staff

members at a recovery-based-living facility. He was arrested and jailed on a bench warrant, and he entered his second plea a few days later.

The morning of the date set for sentencing, an assistant public defender filed a short written motion for continuance. The assistant public defender noted that Bozarth was represented by her office[1] and her supervisor—who was apparently assigned the case under their internal system and had appeared for Bozarth previously—was not available because he was in trial elsewhere. The motion indicated the assistant county attorney resisted.

The assistant public defender appeared for sentencing and restated her request for continuance at the start of the hearing. She cited what she described as her lack of familiarity with the case: "Any information I have would be based on the [presentence investigation report (PSI)]" and "I don't know the defendant personally in regards to the attorney-client relationship that you form with your client."[2] The court asked why the assistant public defender did not file the request to continue until the morning of sentencing, and she gave a meandering explanation, noting "the Court is probably going to disagree with me," and blaming the unpredictability of criminal defendants taking pleas on the eve of trial for the public defenders' calendar troubles. In the end, she could not explain why her supervisor had not himself moved for a continuance earlier or asked her to do so. The State resisted a continuance, noting the victim "ma[d]e significant

---

[1] As far as the court system is concerned, "the local public defender" was appointed—not an individual public defender. Iowa Code § 13B.4(2).

[2] In its appellate brief, the State points out that the same assistant public defender filled in to represent Bozarth at his second plea hearing and did not have the lack of familiarity she claimed. The record supports the State's observation.

arrangements" to attend sentencing and the public defenders did not seek to make alternative arrangements until that morning.

The court voiced understanding about the position the assistant public defender was put in by her supervisor and expressed frustration that the public defenders' office "expect[ed] everyone else's schedule to be able to change at the last minute just so that you can hang on to multiple [legal matters] that you've got going on." The court noted that, if it had known earlier than the morning of sentencing, it may have been more amenable to a continuance. And the court stressed the victim's statutory right to attend the proceedings. *See* Iowa Code § 915.21. The court denied the continuance and ruled:

> I am not going to, at the eleventh hour, grant this continuance request because I don't believe there is good cause to do so under the circumstances, and I also find that . . . the lateness of it is something that could have been avoided but is not going to be to your client's detriment.

From there, the assistant public defender offered at least twelve substantive corrections to the PSI, ranging from comments about substance abuse to criminal history. The court asked Bozarth whether he had personally reviewed the PSI, whether he had enough time to do so, and whether he agreed with all of his attorney's corrections; Bozarth agreed with each. The court asked Bozarth if he had any additional corrections, and he said no.

The State recommended the court sentence Bozarth to prison based on the victim impact statement, his criminal history and failure to rehabilitate, and the nature of the offense. The assistant public defender made a lengthy recommendation requesting leniency based on Bozarth's home circumstances and upbringing, mental-health and substance-abuse issues, family troubles, and

what she characterized as recent successful interventions to address some of these deficits. She requested the court place Bozarth on probation and suspend the prison sentence, stressing that she did not think prison would rehabilitate him but probation would. Bozarth urged similar themes in his allocution. And the victim gave an impact statement describing how Bozarth terrorized her. She repeatedly highlighted his failure to rehabilitate and the ongoing danger he presented to the community, concluding with: "I'm not going to be his last victim."

In imposing sentence, the court informed Bozarth that his explanations for the criminal conduct struck the court as "unbelievable." The court also cited the victim impact statement, Bozarth's failure to obey court orders, the PSI, the nature of the offense, and Bozarth's age and criminal history. The court sentenced Bozarth to prison and denied his request for delayed mittimus based in part on the safety of the victim. Bozarth filed a notice of appeal.

## II.    Appellate Jurisdiction

Because Bozarth pled guilty, we must assure ourselves of jurisdiction. *See State v. Treptow*, 960 N.W.2d 98, 104–05 (Iowa 2021). By statute, we may only proceed if he has "establishe[d] good cause." Iowa Code § 814.6(1)(a)(3).

Bozarth spends much of his appellate brief claiming the denial of the continuance violated his constitutional rights. While he vaguely referenced his "constitutional rights" in his morning-of-sentencing motion to continue, he did not specify which constitutional rights he thought were violated nor did he obtain a ruling on any such claim. The court's oral ruling is clear the court understood itself to be merely exercising its ordinary discretion to determine "good cause." Thus, Bozarth did not preserve error on any constitutional claim. *See State v. Rutledge*,

600 N.W.2d 324, 326 (Iowa 1999). And we find that, under section 814.6(1)(a)(3), Bozarth has not established "good cause" regarding this claim. *See State v. Schroeder*, No. 24-1547, 2025 WL 1089810, at *1 (Iowa Ct. App. Apr. 9, 2025) ("Both the supreme court and our court have consistently . . . held there generally is not 'good cause' to review unpreserved errors.") (also collecting cases).

All we are left with is a challenge that the district court abused its discretion when it denied the continuance. But has Bozarth proven "good cause" to appeal that ruling? It's an interesting question. The State does not contest error preservation and instead analogizes to a civil case, arguing "good cause" is not satisfied by "inadvertence, neglect, misunderstanding, [or] ignorance" in the context of serving papers. *See Crall v. Davis*, 714 N.W.2d 616, 620 (Iowa 2006) (citation omitted). We are hesitant to wade into new waters and thoroughly explore whether that meaning of "good cause" can be engrafted onto section 814.6. So rather than consider this as a good-cause appeal, we exercise our discretion pursuant to Iowa Rule of Appellate Procedure 6.106 to grant discretionary review and consider the continuance question as an issue of importance to the bench and bar under section 814.6(2)(e), given the public discussion surrounding indigent defense in this state.

### III. Standard of Review

"A trial court's ruling on a motion for continuance will not be interfered with on appeal unless it clearly appears that the trial court has abused its discretion, and an injustice has resulted therefrom." *State v. Grimme*, 338 N.W.2d 142, 144 (Iowa 1983) (cleaned up). As our supreme court has recognized, this is the kind of courtroom-management call we entrust to the district court:

We call upon our trial judges to do justice to those needing and deserving a continuance, while at the same time resolutely moving the trial assignment toward the speedy resolution of cases. The trial judge must sense whether a given continuance motion stems from a legitimate need, or from a wish to delay. From its closer vantage point, the trial court can better sort through these matters than an appellate court can.

*State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992). Both the State's and defendant's interests are relevant. *See State v. Artzer*, 609 N.W.2d 526, 530 (Iowa 2000).

## IV. Discussion

In our view, the district court here did not act unreasonably or rely on untenable reasons in denying the last-minute continuance. As the State's brief says, "Bozarth's claimed good cause for the delay was essentially premised on neglect and inadvertence by counsel in scheduling." And this is not "good cause" for a continuance. *Cf. State v. Hines*, 225 N.W.2d 156, 158–59 (Iowa 1975) (rejecting the premise that chronic court congestion can serve as "good cause" for continuances). While sympathetic to the workload of the public defender's office in a populous county, we agree with the district court that leaving all matters set for hearing or trial, hoping some drop off, and filing a last-minute continuance in the rest is not an appropriate or sustainable docket-management strategy. Also like the district court, we consider the victim's statutory rights and the significant arrangements she made to attend sentencing a relevant consideration. The district court's rationale for denying the continuance makes sense to us. And while we acknowledge perhaps reasonable jurists could differ on the exact appropriate time to request a continuance, we discern no abuse of discretion in this matter.

To the extent we can, we also explore the strength of Bozarth's suggestion he was prejudiced by denial of the continuance. First, we—again like the district court—recognize the assistant public defender may have been put in a bad spot by her supervisor, and we have no reason to doubt the sincerity of her frustration at apparently filling in for him at the last minute and filing a morning-of motion for continuance at his direction. But the assistant public defender actually represented Bozarth at his plea hearing less than a month before sentencing, where she was again "filling in for" her boss. At this hearing, Bozarth gave a lengthy factual basis, had conversations with the assistant public defender during the colloquy, and indicated he was satisfied with counsel's services. So, to state the obvious, counsel's claim that she didn't know Bozarth or his case wasn't quite true. And we further observe that her performance at sentencing—including numerous corrections to the PSI and a vigorous sentencing recommendation—reflects that she did in fact know both case and client. Bozarth makes no suggestion of what other counsel would have done that the assistant public defender did not, nor does he allege any actual deficiency in her representation. Beyond this, we also recognize that it is not unusual for prosecutor or public-defender coworkers to cover each other's plea or sentencing hearings on busy criminal dockets in populous counties. The frequency of that event alone weighs against Bozarth's claim that we should find prejudice. And we certainly discern no "injustice" that warrants reversal. *See Grimme*, 338 N.W.2d at 144.

**V.      Disposition**

Finding no good cause to review the constitutional issue, we express no opinion on it.    We treat Bozarth's appellate papers as an application for discretionary review and grant it.  And we affirm, finding no abuse of discretion.

**AFFIRMED.**